IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

FILED
MAR 03 2023
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
BY_____ DEPUTY

| | |
|---|---|
| Mark Alan Shoemaker<br><br>    Plaintiff,<br><br>vs.<br><br>Quintessa LLC, an Oklahoma limited liability company; Quintessa Marketing, LLC, an Oklahoma limited liability company; Does 1-10, inclusive.<br><br>    Defendants. | ) Case No.: 23-CV-202-J<br>)<br>) COMPLAINT FOR:<br>)<br>) (1) Breach of Contract<br>) (2) Breach of the Covenant of Good<br>)     Faith and Fair Dealing<br>) (3) Fraud<br>) (4) Negligent Misrepresentation<br>) (5) Intentional Interference with<br>)     Business Relations<br>) (6) Negligent Interference with<br>      Business Relations<br>   (7) Conspiracy<br>   (8) Intentional Interference with<br>       Contract<br>   (9) Negligent Interference with<br>       Contract |

**DEMAND FOR JURY TRIAL**

Plaintiff Mark Alan Shoemaker ("Plaintiff") alleges,

**JURISDICTION AND VENUE**

1.     This court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs; and the matter in controversy is between Plaintiff, which is a citizen of

PLAINTIFF'S ORIGINAL COMPLAINT            1

the State of Texas, Quintessa LLC, an Oklahoma limited liability company ("Quintessa #1) a citizen of the State of Oklahoma and Quintessa Marketing LLC, an Oklahoma limited liability company ("Quintessa #2) a citizen of the State of Oklahoma.

2.   Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because one or more of the defendants' principal place of business is in the judicial district.

## PARTIES

3.   Plaintiff is a citizen of the State of Texas.

4.   Defendant Quintessa #1 is a citizen of the State of Oklahoma with principal office at either 7919 Mid America Boulevard #230, Oklahoma City, Oklahoma 73135 or 1900 NW Expressway, Ste 1600, Oklahoma City, OK 73118

5.   Defendant Quintessa #2 is a citizen of the State of Oklahoma with principal office at either 7919 Mid America Boulevard #230, Oklahoma City, Oklahoma 73135 or 1900 NW Expressway, Ste 1600, Oklahoma City, OK 73118

## FACTS

6.   Plaintiff is an individual who lives in Fort Bend County, State of Texas. Plaintiff is the assignee of Clear View Enterprises, LLC, a California limited liability company ("Clear View" or "Plaintiff's Assignor") of all claims, choses in action, things in action against Quintessa #1 and Quintessa #2.

7. Clear View's business is the marketing development of case referrals to lawyers and law firms. Based on Clear View's experience in market of lead generation and sales to law firms, Clear View has business relationships with law firms.

8. On November 30, 2020, Clear View and Quintessa #1 signed a contract. A copy is attached hereafter referred to as Exhibit 1. Under Exhibit 1, Clear View referred law firms Quintessa #1 for a specific commission payable by Quintessa #1 to Clear View for each signed retainer. Clear View had a business relationship with the law firm referrals to Quintessa #1

## CLAIMS FOR RELIEF

## COUNT ONE

### (Breach of Contract Against Quintessa #1)

9. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 8 as though fully set forth herein.

10. Exhibit 1 is an agreement between Plaintiff's Assignor and Quintessa #1.

11. Quintessa #1 was to pay Plaintiff's Assignor a specific commission for every signed retainer as provided in Exhibit 1.

12. Plaintiff's Assignor performed the contract by making referrals to Quintessa #1.

13. Quintessa #1 breached the contract by failing to pay Plaintiff's Assignor for every signed and delivered retainer to the law firms referred by Plaintiff's Assignor.

14. Quintessa #1's breach was further demonstrated by its refusal to provide an accounting to Plaintiff's Assignor of the total amount of retainers paid by the referred law firms.

15. As a result of Quintessa #1's breach, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

## COUNT TWO

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Quintessa #2)

16. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 15 as though fully set forth herein.

17. Exhibit 1, the contract between Plaintiff's Assignor and Quintessa #1, states that Quintessa #1 will pay a specific commission to Plaintiff's Assignor for every retainer signed with a law firm referred by Plaintiff's Assignor.

18. Plaintiff's Assignor did all, or substantially all of the significant things that the contract required of it to do.

19. That all conditions required for Quintessa #1's performance had occurred.

PLAINTIFF'S ORIGINAL COMPLAINT                                   4

20.  That Quintessa #1's failing and refusing to pay commission to Plaintiff's Assignor for every signed and delivered retainer to the law firms referred by Plaintiff's Assignor and also subsequently failing and refusing to provide an accounting to Plaintiff's Assignor prevented Plaintiff's Assignor from receiving the benefits of the contract.

21.  That by doing so, Quintessa #1 did not act fairly and in good faith.

22.  As a result of Quintessa #1's conduct and breach, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

23.  Quintessa #1's conduct described herein was done with a conscious disregard of Plaintiff's Assignor's rights and with the intent to vex, injure or annoy Plaintiff's Assignor such as to constitute oppression, fraud or malice, entitling Plaintiff to punitive damages which should be an amount no less than $250,000 or appropriate to punish or set an example of Quintessa #1.

## COUNT THREE

### (Fraud – Intentional Misrepresentation Against Quintessa #1)

24.  Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 23 as though fully set forth herein.

25. Quintessa #1 through its agents made knowingly false representations to Plaintiff's Assignor that Quintessa #1 would pay a specific commission to Plaintiff's Assignor for every signed and delivered retainer to the law firms referred by Plaintiff's Assignor.

26. Quintessa #1 made such knowingly false representations with the intent to deceive or induce reliance by Plaintiff's Assignor so that Plaintiff's Assignor would sign Exhibit 1 and would refer law firms to Quintessa #1. Such intent is demonstrated by Quintessa #1 refusing to provide an accounting of the signed retainers of the law firms referred by Plaintiff's Assignor.

27. Plaintiff justifiably relied on the false representations of Quintessa #1 because to hide the true intent. Quintessa #1 made some payments, but it was clear or was evident that Quintessa #1 had an ulterior motive overall due to its refusal be transparent and provide an accounting.

28. As a result of Quintessa #1's conduct, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

29. Quintessa #1's conduct described herein was done with a conscious disregard of Plaintiff's Assignor's rights and with the intent to vex, injure or annoy Plaintiff's Assignor such as to constitute oppression, fraud or malice, entitling

Plaintiff to punitive damages which should be an amount no less than $250,000 or appropriate to punish or set an example of Quintessa #1.

## COUNT FOUR

### (Negligent Misrepresentation Against Quintessa #1)

30. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 29 as though fully set forth herein.

31. Quintessa #1 through its agents made representations of fact to Plaintiff's Assignor that Quintessa #1 would pay a specific commission to Plaintiff's Assignor for every retainer signed with a law firm referred by Plaintiff's Assignor.

32. Quintessa #1's representations were not true in that Quintessa #1 did not pay Plaintiff's Assignor for every signed and delivered retainer to the law firms referred by Plaintiff's Assignor.

33. Quintessa #1 had no reasonable grounds for believing the representations about paying Plaintiff's Assignor for every retainer signed by a law firm referred by Plaintiff's Assignor were true when they made them since Quintessa #1 refused to be transparent, refused an accounting and attempted to hide the actual amount payments due by making a few payments.

34. Quintessa #1 intended that Plaintiff's Assignor rely on its and its agents representations about the intent to pay Plaintiff's Assignor for every retainer signed by a law firm referred by Plaintiff's Assignor.

35. Plaintiff's Assignor reasonably relied on the representations as Quintessa #1 and its agents appeared to be legitimate and experienced sellers of leads to law firms.

36. Plaintiff's Assignor's reliance on Quintessa #1 and its agent's representations was a substantial factor in causing Plaintiff's harm.

37. As a result of Quintessa #1's conduct, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

## COUNT FIVE

### (Intentional Interference with Business Relations Against Quintessa #1)

38. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 29 as though fully set forth herein.

39. Plaintiff's Assignor had established a business relationship with the law firms that were referred to Quintessa #1.

40. Quintessa #1 intentionally mishandled the referrals and mismanaged the leads that were sold to the law firms in a way that reflected on Plaintiff's Assignor and damaged the relationships to the point that the law firms refused to do further

business with Plaintiff's Assignor.

41. Quintessa #1 knew that such mishandling of the leads and the managing of the cases with the referral law firms would negatively reflect on Plaintiff's Assignor and would damage future business prospects between Plaintiff's Assignor and the referred law firms.

42. As a result of Quintessa #1's conduct, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

43. Quintessa #1's conduct described herein was done with a conscious disregard of Plaintiff's Assignor's rights and with the intent to vex, injure or annoy Plaintiff's Assignor such as to constitute oppression, fraud or malice, entitling Plaintiff to punitive damages which should be an amount no less than $250,000 or appropriate to punish or set an example of Quintessa #1.

## COUNT SIX

**(Negligent Interference with Business Relations Against Quintessa #1)**

44. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff's Assignor had established a business relationship with the law firms that were referred to Quintessa #1.

46. Quintessa #1 negligently mishandled the referrals and mismanaged the leads

that were sold to the law firms in a way that reflected on Plaintiff's Assignor and damaged the relationships to the point that the law firms refused to do further business with Plaintiff's Assignor.

47. Quintessa #1 either knew or reasonably believed that such mishandling of the leads and the managing of the cases with the referral law firms would negatively reflect on Plaintiff's Assignor and would damage future business prospects between Plaintiff's Assignor and the referred law firms.

48. As a result of Quintessa #1's conduct, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

## COUNT SEVEN

**(Conspiracy to Commit Fraud Against Quintessa #1 and Quintessa #2)**

49. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 48 as though fully set forth herein.

50. Quintessa #1 entered into an agreement with Quintessa #2 to form a conspiracy to conceal and withhold the actual amount of retainers that Quintessa #1 was paid by the law firms referred by Plaintiff's Assignor.

51. Quintessa #1 and Quintessa #2 engaged in the wrongful conduct in furtherance of the conspiracy by withholding the true amount of retainers paid to Quintessa #1 by the law firms that were referred by Plaintiff's Assignor.

52.     As a result of the conspiracy between Quintessa #1 and Quintessa #2, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

53.     Quintessa #1 and Quintessa #2's conduct described herein was done with a conscious disregard of Plaintiff's Assignor's rights and with the intent to vex, injure or annoy Plaintiff's Assignor such as to constitute oppression, fraud or malice, entitling Plaintiff to punitive damages which should be an amount no less than $250,000 or appropriate to punish or set an example of Quintessa #1 and Quintessa #2.

## COUNT EIGHT

**(Conspiracy to Intentionally Interfere with Business Relations Against Quintessa #1 and Quintessa #2)**

54.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 53 as though fully set forth herein.

55.     Quintessa #1 entered into an agreement with Quintessa #2 to form a conspiracy to interfere with the business relations Plaintiff's Assignor had with the law firms referred to Quintessa #1.

56.     Quintessa #1 and Quintessa #2 engaged in the wrongful conduct in furtherance of the conspiracy to intentionally mishandle the referrals by Plaintiff's

Assignor and mismanage the leads that were sold to the law firms in a way that reflected on Plaintiff's Assignor and damaged the relationships to the point that the law firms refused to do further business with Plaintiff's Assignor.

57. As a result of the conspiracy between Quintessa #1 and Quintessa #2, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

58. Quintessa #1 and Quintessa #2's conduct described herein was done with a conscious disregard of Plaintiff's Assignor's rights and with the intent to vex, injure or annoy Plaintiff's Assignor such as to constitute oppression, fraud or malice, entitling Plaintiff to punitive damages which should be an amount no less than $250,000 or appropriate to punish or set an example of Quintessa #1 and Quintessa #2.

## COUNT NINE

### (Conspiracy to Negligently Interfere with Business Relations Against Quintessa #1 and Quintessa #2)

59. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 58 as though fully set forth herein.

60. Quintessa #1 entered into an agreement with Quintessa #2 to form a conspiracy to interfere with the business relations Plaintiff's Assignor had with the law firms referred to Quintessa #1.

61. Quintessa #1 and Quintessa #2 engaged in the wrongful conduct in furtherance of the conspiracy to negligently mishandle the referrals by Plaintiff's Assignor and mismanage the leads that were sold to the law firms in a way that reflected on Plaintiff's Assignor and damaged the relationships to the point that the law firms refused to do further business with Plaintiff's Assignor.

62. As a result of the conspiracy between Quintessa #1 and Quintessa #2, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

## COUNT TEN

**(Intentional Interference with Contract Against Quintessa #2)**

63. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 62 as though fully set forth herein.

64. Plaintiff's Assignor entered into a contract with Quintessa #1 and is attached as Exhibit 1.

65. Quintessa #2 had knowledge of this contract due to the fact that they worked together on the referrals provided by Plaintiff's Assignor under Exhibit 1 and they had the same or similar agents and management.

66. Quintessa #2 intentionally caused Quintessa #1 to withhold information and payments of commission to Plaintiff's Assignor and intentionally caused Quintessa #1 to refuse to provide an accounting knowing such refusal furthered the breach of contract and increased the damages to Plaintiff's Assignor.

67. There was an actual breach or disruption of the contractual relationship between Quintessa #1 and Plaintiff's Assignor.

68. As a result of Quintessa #2's intentional interference, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

69. Quintessa #2's conduct described herein was done with a conscious disregard of Plaintiff's Assignor's rights and with the intent to vex, injure or annoy Plaintiff's Assignor such as to constitute oppression, fraud or malice, entitling Plaintiff to punitive damages which should be an amount no less than $250,000 or appropriate to punish or set an example of Quintessa #2.

## COUNT ELEVEN

## (Negligent Interference with Contract Against Quintessa #2)

70. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 69 as though fully set forth herein.

71 Plaintiff's Assignor entered into a contract with Quintessa #1 and is attached as Exhibit 1.

72. Quintessa #2 had knowledge of this contract due to the fact that they worked together on the referrals provided by Plaintiff's Assignor under Exhibit 1 and they had the same or similar agents and management.

73. Quintessa #2 negligently caused Quintessa #1 to withhold information and payments of commission to Plaintiff's Assignor and intentionally caused Quintessa #1 to refuse to provide an accounting knowing such refusal furthered the breach of contract and increased the damages to Plaintiff's Assignor.

74. There was an actual breach or disruption of the contractual relationship between Quintessa #1 and Plaintiff's Assignor.

75. As a result of Quintessa #2's intentional interference, Plaintiff has been damaged in the amount estimated to be over $100,000, but according to proof at the time of trial.

## PRAYER

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against Defendants as follows:

76. Compensatory damages in an amount in excess of $100,000, but according to proof at the time of trial.

77. Punitive and exemplary damages in the amount of $250,000.

78. Such further relief as the Court deems proper.

Respectfully submitted,

Mark Alan Shoemaker, pro se
21215 Concordia Park Lane
Richmond, Texas 77407
(214) 325 1730
mark.alan.shoemaker@gmail.com