EXHIBIT 1

## LEAD COMMISSION AGREEMENT

This LEAD COMMISSION AGREEMENT (the "Agreement") is made and entered into as of November _3 0_ 2020, by and between Quintessa LLC, an Oklahoma limited liability company of 7919 Mid America Boulevard #230, Oklahoma City, Oklahoma 73135 ("Quintessa"), and Clear View Enterprises LLC, a California limited liability company of 3400 Cottage Way STE G2 #855, Sacramento, CA 95825 ("Clear View") (collectively referred to as the "parties").

### DEFINITIONS.

**Campaign** means any engagement or project whereby Quintessa is selling Qualified Leads to a Contracted Law Firm.

**Contracted Law Firm** means a law firm referred to Quintessa by Clear View and with whom Quintessa has contracted to provide Qualified Leads.

**Qualified Lead** means a personal injury case or claim that is accepted by a Contracted Law Firm and not returned or disengaged within seven (7) days.

**Lead Fee** means the fee paid by a Contracted Law Firm to Quintessa for a Qualified Lead.

**Lead Fee Commission** means the commission payable by Quintessa to Clear View for each Qualified Lead that a Contracted Law Firm accepts and pays Quintessa for in a given Campaign.

**Quintessa** means Quintessa LLC and any of its subsidiaries that is engaged in a relationship with a Contracted Law Firm involving the delivery of Qualified Leads.

**Rejected by Contracted Law Firm** means any Qualified Lead that is rejected or ultimately the basis for a complete refund of Lead Fee by Quintessa back to a Contracted Law Firm.

**Accepted by Contracted Law Firm** means any Qualified Lead that is accepted and paid for by a Contracted Law Firm and is not disengaged within seven (7) days.

### RECITALS.

WHEREAS, Clear View wishes to secure business for Quintessa by referring Quintessa law firms with whom Quintessa can contract for the sale of Qualified Leads;

WHEREAS, any law firms that become Contracted Law Firms will pay Quintessa a Lead Fee for each Qualified Lead delivered by Quintessa; and

WHEREAS, Quintessa and Clear View believe that Clear View should receive a commission for each Qualified Lead sent by Quintessa to a Contracted Law Firm.

Page 1 of 6

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt of which is hereby acknowledged, both parties hereto agree as follows:

**AGREEMENT.**

**I.    COMPENSATION; LEAD FEE COMMISSION.** Quintessa shall pay to Clear View a Lead Fee Commission for each Qualified Lead delivered to a Contracted Law Firm. All Lead Fee Commissions shall be set by a Supplemental Commission Agreement which the parties shall enter into for each Contracted Law Firm. The Supplemental Commission Agreement shall be in a form substantially similar to the example attached as Exhibit A to this Agreement. The terms of this Agreement shall govern and apply to all Supplemental Commission Agreements between the parties.

**II.    PAYMENT TERMS.** The Lead Fee Commissions payable to Clear View under this Agreement and any Supplemental Commission Agreement shall be calculated and paid by the 15th day of the month following the end of each respective Campaign.

**III.    TERM OF AGREEMENT.** This Agreement and any Supplemental Commission Agreement hereafter entered into shall remain in effect in perpetuity for as long as Contracted Law Firm remains a client of Quintessa.

**IV.    RESCISSION OF AGREEMENT BY CONTRACTED LAW FIRM.** In the event any Contracted Law Firm cancels or suspends all or part of any Campaign initiated after the execution of this Agreement, or requests and obtains a refund for amounts paid to Quintessa for any Campaign, Clear View agrees to refund any and all commissions or payments made to Clear View by Quintessa in connection with such cancelled or suspended Campaign(s).

**V.    PROHIBITION ON DISCLOSURE OF CONFIDENTIAL INFORMATION.** Throughout the course of this Agreement and the parties' business relationship, Clear View may come into possession of or obtain certain information from Quintessa which Quintessa deems to be confidential ("Confidential Information"). Such Confidential Information shall include, but shall not be limited to (i) any form of marketing plan, strategies, financial information or projections, operations, sales quotes or estimates, business plans, performance results which may be related to the past, present and/or future business activities of said party, its subsidiaries and affiliated companies; (ii) plans for products or services, and customer or supplier lists; (iii) any scientific, technical or data information, invention, design, process, procedure, formula, improvement, technology or method; (iv) any concepts, reports, data, knowledge, works in progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets, trademarks and copyrights; (v) business practices or models; (vi) business relationships with any other customers, clients, or partners; (vii) intake services, methods, scripts, or best practices; and (viii) any other information that Quintessa reasonably considers to be Confidential Information. Confidential Information need not be novel, unique, patentable, copyrightable or constitute a trade secret in order to be designated Confidential Information. Clear View acknowledges that all Confidential Information is

proprietary to Quintessa, has been developed and obtained through great efforts, and that Quintessa regards all of its Confidential Information as trade secrets.

Clear View expressly agrees to keep all Confidential Information strictly confidential and promises not to disclose, distribute, or broadcast such information to any third party, including his representatives, agents and employees, by any means, and under any circumstances. This prohibition on disclosure of Confidential Information shall continue indefinitely.

**VI. COMPELLED DISCLOSURE.** In the event Clear View, its agents or representatives are legally compelled to disclose any Confidential Information under this Agreement, Clear View shall provide Quintessa with prompt written notice so that Quintessa may seek a protective order or other appropriate legal or equitable relief.

**VII. NOTICE OF BREACH.** Clear View shall immediately notify Quintessa upon discovering any unauthorized use or disclosure of Confidential Information by Clear View or its representatives, or any other breach of this Agreement by the Clear View or its representatives. Further, Clear View will cooperate with any efforts by Quintessa to regain the possession of Confidential Information and prevent its further unauthorized use.

**VIII. ADDITIONAL TERMS.**

    a. **Remedies.** The parties acknowledge and agree that all Confidential Information under this Agreement is of a unique and valuable nature, and that the unauthorized disclosure, distribution, or broadcasting of such information could have the potential to destroy and, at the very least, diminish the value of such information. The damages that Quintessa could sustain as a direct result of the unauthorized dissemination of the Confidential Information would be impossible to calculate. Therefore, both parties hereby agree that the Quintessa shall be entitled to claim injunctive relief that would prevent the dissemination of any Confidential Information that would be in violation of the terms contained in this Agreement. Any such injunctive relief provided shall be in addition to any other available remedies, whether at law or in equity. In addition, Quintessa shall be entitled to recover any sustained costs and/or fees, including, but not limited to, any reasonable attorney's fees which may be incurred while attempting to obtain any such relief. Furthermore, in the event of any litigation related to this Agreement, the prevailing party shall be entitled to recover all reasonable attorney's fees and expenses incurred.

    b. **Return of Confidential Information.** Upon completion, expiration, or termination of this Agreement, Clear View shall immediately return and deliver to Quintessa all tangible material and/or information representing or exemplifying the Confidential Information provided hereunder and all notes, summaries, memoranda, drawings, manuals, records, excerpts or derivative information deriving therefrom and all other documents, materials, notes or copies, which may have been converted to any computerized media in the form of any image, data or word processing files either manually or by image capture or any other form of work product that may be based on or include any

Confidential Information, in whatever form of storage or retrieval, upon the earlier of (i) the completion or termination of this Agreement, or (ii) at such time as Quintessa may so request. Alternatively, with the prior written consent of Quintessa, Clear View may immediately destroy any of the foregoing Confidential Information and, upon request, certify in writing that such destruction has taken place.

c. **No Partnership or Joint Venture Created.** This Agreement does not create or constitute a joint venture or partnership of any kind between the parties.

d. **Warranty.** Each party herein warrants that it has full power, right, and authority to make the promises and guarantees contained in this Agreement.

e. **Governing Law.** The validity, construction, and performance of this Agreement shall be governed and construed in accordance with the laws of Oklahoma or any applicable federal laws or statutes applicable to contracts, without regard to any conflict of law provisions. The parties agree that the federal and state courts located in Oklahoma County, Oklahoma shall have sole and exclusive jurisdiction over any disputes arising under the terms of this Agreement. The parties further waive any objection to jurisdiction and venue in such courts.

f. **Waiver of Contractual Right.** Any failure by either party to enforce the other party's performance of any provision of this Agreement shall not constitute a waiver of its right to subsequently enforce such provision or any other provision of this Agreement.

g. **Severability.** If any provision of this Agreement is or becomes invalid, illegal, or unenforceable in any respect under any law, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired. In the event any provision of this Agreement is found invalid or unenforceable for any reason, such provision shall be construed in a manner that will render the provision legal and enforceable while still achieving the original intent of the parties.

h. **Notices.** Any notices or communications required or permitted to be given hereunder may be delivered by hand, deposited with a nationally recognized overnight carrier, or mailed by certified mail, return receipt requested, postage prepaid, in each case, to the address of the other party.

i. **Transfer or Assign.** This Agreement is personal in nature, and neither party may directly or indirectly assign or transfer it by operation of law or otherwise without the prior written consent of the other party. All obligations contained in this Agreement shall extend to and be binding upon the parties to this Agreement and their respective successors, assigns, and designees.

j.  **Paragraph Headings.** All headings used in this Agreement are for reference only and shall not be used or relied upon in the interpretation of this Agreement.

k.  **Entire Agreement.** This Agreement constitutes the entire understanding between the parties and supersedes any and all prior or contemporaneous understandings and agreements, whether oral or written, between the parties, with respect to the subject matter hereof. This Agreement can be modified only by subsequent written agreement signed by each of the parties hereto.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties have caused this Agreement to be duly executed as of the date written above.

QUINTESSA LLC

By: _____
Quintessa LLC by Lauren McNeil,
Chief Executive Officer


CLEAR VIEW ENTERPRISES LLC

By: _____
Craig Alinder
TITLE  Vice President

Page 5 of 6

## EXHIBIT A

## SUPPLEMENTAL COMMISSION AGREEMENT

I. Clear View has referred to Quintessa ___Law Firm___, who wishes to begin a Campaign to purchase Qualified Leads from Quintessa.

II. In ___Law Firm's___ region or jurisdiction, Quintessa is typically capable of charging law firm clients a lead fee of $_____ per non-commercial Qualified Lead, and $_____ per commercial Qualified Lead.

III. However, ___Law Firm___ has contracted to pay Quintessa a Lead Fee of $_____ per non-commercial Qualified Lead, and $_____ per commercial Qualified Lead.

IV. As compensation for securing ___Law Firm's___ business for Quintessa, Quintessa shall pay Clear View a Lead Fee Commission of:

   a. _____ per non-commercial Qualified Lead; and

   b. _____ per commercial Qualified Lead.

V. The parties agree that the above Lead Fee Commissions represent the difference between the Lead Fee being charged to ___Law Firm___ and the lead fee Quintessa is typically capable of charging law firm clients in the same region or jurisdiction.

VI. This Supplemental Commission Agreement shall be governed by the terms and definitions contained in the parties' Lead Commission Agreement.

QUINTESSA LLC

By: _____
Quintessa LLC by Lauren McNeil,
Chief Executive Officer

CLEAR VIEW ENTERPRISES LLC

By: _____
Craig Alinder
Vice President