## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Mark Alan Shoemaker, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 23-CV-202-J |
| | ) | |
| Quintessa LLC, an Oklahoma limited liability company; Quintessa Marketing, LLC, an Oklahoma limited liability company; Does 1-10, inclusive, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT QUINTESSA LLC'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant, Quintessa LLC ("Quintessa"),[1] moves the Court to dismiss Plaintiff's

Complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(6) and

12(b)(1). In support, Quintessa submits the attached brief.

Respectfully submitted,

*/s/ Benjamin M. McCaslin*
Benjamin M. McCaslin, OBA No. 32826
STRIDE LAW, PLLC
P.O. Box 1407
Guthrie, OK 73044
Telephone: (405) 562-7740
Facsimile: (405) 562-5646
Email: ben@stride.law
**ATTORNEY FOR DEFENDANT**
**QUINTESSA LLC**

---

[1] Plaintiff's Complaint names as Defendants both "Quintessa LLC" and "Quintessa Marketing, LLC." As discussed below, "Quintessa Marketing, LLC" is a non-existent entity. "Quintessa Marketing" is simply the tradename for Quintessa LLC.

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 7

II.   LEGAL STANDARDS ...................................................................................... 7

    A.    Failure to State A Claim. ......................................................................... 7

    B.    Lack of Subject Matter Jurisdiction. ....................................................... 8

III.  ARGUMENT ..................................................................................................... 9

    A.    Shoemaker Has Failed to Demonstrate a Valid Assignment of his
          Breach of Contract Claim (Count 1), Has No Plausible Claim for
          Relief on this Count, and Lacks Standing to Assert the Same. ................. 9

    B.    Shoemaker Has Failed To Demonstrate a Valid Assignment of
          Counts 2-11, Has No Plausible Claim for Relief on Such Counts,
          and Lacks Standing to Assert the Same. ................................................. 10

    C.    Because Shoemaker Lacks Standing To Assert Any Breach of
          Contract or Tort Claims Against Quintessa, His Complaint Must
          be Dismissed For Lack of Subject Matter Jurisdiction. ......................... 12

    D.    Even if Clear View's Assignments Are Valid and Shoemaker Has
          Standing to Bring the Present Claims, Counts 2-11 Must Be
          Dismissed for Independent Reasons under Federal Rule of Civil
          Procedure 12(b)(6). ............................................................................... 13

        i.    Count 2 – Breach of the Implied Covenant of Good Faith and
            Fair Dealing Against Quintessa #1 ............................................... 13

        ii.   Count 3 – Fraud/Intentional Misrepresentation. .......................... 16

        iii.  Count 4 – Negligent Misrepresentation. ...................................... 18

        iv.   Counts 5 and 6 – Intentional Interference with Business
            Relations and Negligent Interference with Business Relations. ................ 18

        v.    Counts 7-9 – Conspiracy to Commit Fraud, Conspiracy to
            Intentionally Interfere with Business Relations, and
            Conspiracy to Negligently Interfere with Business Relations
            Against Quintessa #1 and Quintessa #2. ....................................... 21

vi. Counts 10 and 11 – Intentional Interference with Contract and
Negligent Interference with Contract Against Quintessa #2 ..................... 22

E.    Shoemaker's Plea for Punitive Damages Must Be Rejected. ........................... 23

IV.    CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 7

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Group*, 2014 WL 3891267 (N.D. Okla. Aug. 7, 2014) .................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 8

*Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141 (10th Cir. 2013) ......................... 9

*Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991 (10th Cir. 2008) ......................... 14

*Dotson v. AWA Collections*, Case No. 22-6078 (10th Cir. decided April 24, 2023) ................................................................................................................ 11

*Dotson v. IC Systems Inc.*, Case No. 5:22-cv-00014-HE (W.D. Okla. May 9, 2022) .................................................................................................................. 11

*Dotson v. Midland Credit Management, Inc.*, Case No. 5:22-cv-257-R (W.D. Okla. May 17, 2022) ..................................................................................... 12

*Dotson v. Source Receivables Management, et. al.*, Case No. 5 :22-cv-00198-HE (W.D. Okla. May 10, 2022) ................................................................. 12

*Embry v. Innovative Aftermarket Sys. LP*, 2010 OK 82, 247 P.3d 1158 .......................... 16

*First National Bank & Trust Co. of Vinita v. Kissee*, 1993 OK 96, 859 P.2d 502 ............................................................................................................ 14, 15

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) ...................................... 12

*Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220 (10th Cir. 2012) ..................... 8, 13

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) ................................................................... 8

*Horton v. Bank of America*, 189 F. Supp. 3d 1286 (N.D. Okla. 2016) ........................... 16

*In re Kaufman*, 2001 OK 88, 37 P.3d 845 ........................................................................ 9

*Kiefner v. Sullivan*, Case No. 13-CV-714-TCK-FHM (N.D. Okla. May 27, 2014) ................................................................................................................ 22

*Lottie v. Midland Credit Management, Inc.*, Case No. 5:21-cv-01171-PRW (W.D. Okla. June 23, 2022) ........................................................ 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................... 8, 12, 13

*McGregor v. National Steak Processors, Inc.*, 2012 WL 314059 (N.D. Okla. Feb. 1, 2012) ........................................................................... 16

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007) ........................ 8

*RJB Gas Pipeline Co. v. Colo. Interstate Gas Co.*, 1989 OK CIV APP 100, 813 P.2d 1 ...................................................................................... 14, 15

*Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, 867 P.2d 1241 ...................................................... 23

*Rodgers v. Tecumseh Bank*, 1988 OK 36, 756 P.2d 1233 ........................... 14, 15

*Schovanec v. Archdiocese of Oklahoma City*, 2008 OK 70, 188 P.3d 158 ........................ 22

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................... 12

*Transcontinental Gas Pipe Line Co. v. Kibby Welding*, LLC, Case No. 18-CV-0445-CVE-FHM (N.D. Okla. Aug. 8, 2019) ............................ 16, 17

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ......................................... 12

*Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, 911 P.2d 1205 ............. 18, 19, 23

*West v. Ditech Financial LLC*, 2016 WL 3200296 (W.D. Okla. June 8, 2016) .......................................................................................... 16

*Wilspec Technologies, Inc. v. Dunan Holding Group*, 2009 OK 12, 204 P.3d 69 .................................................................................... 18, 20, 23

## Statutes

OKLA. STAT. tit. 12, § 2017(D) ......................................................... 11

**Rules**

FED. R. CIV. P. 12(b)(1) ................................................................................. 8, 13

FED. R. CIV. P. 12(b)(6) ..................................................................................... 7

FED. R. CIV. P. 12(h)(3) ..................................................................................... 8

FED. R. EVID. 201(b) ................................................................................... 9, 21

## I.    INTRODUCTION

*Pro se* Plaintiff Mark Alan Shoemaker ("Plaintiff" or "Shoemaker") filed the instant Complaint on March 3, 2023, alleging eleven separate causes of action ranging from breach of contract and fraud to "conspiracy" and tortious "interference with business relations." Shoemaker's claims stem from a contractual relationship Quintessa had with a non-party, Clear View Enterprises, LLC ("Clear View").

Although Shoemaker was not a party to the contract between Quintessa and Clear View and has never done any business with Quintessa whatsoever, Shoemaker alleges he is "the assignee of Clear View's claims." (Complaint, ¶ 6, Dkt. 1). The Complaint does not describe the nature of the assignment from Clear View to Shoemaker, nor is this "assignment" attached to the Complaint. Further, Shoemaker does not explain his affiliation with Clear View or demonstrate that Clear View even knows Shoemaker has filed this lawsuit.

In addition to these failures, both the contract at issue and controlling state law categorically prohibit the purported assignment of any claims to Shoemaker. Thus, Shoemaker has failed to state a claim upon which relief can be granted and has no standing to bring any claims against Quintessa. Accordingly, Shoemaker's Complaint should be dismissed, without leave to amend.

## II.    LEGAL STANDARDS

### A.    <u>Failure to State a Claim.</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss all or portions of a complaint for failure to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff must 'nudge[][his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id*. at 1177 (emphasis in original).

## B.    Lack of Subject Matter Jurisdiction.

Any person invoking the power of a federal court must have standing to do so. This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Further, the Tenth Circuit Court of Appeals has repeatedly characterized standing as an element of subject matter jurisdiction. *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3); FED. R. CIV. P. 12(b)(1).

## III.    ARGUMENT

### A.    Shoemaker Has Failed to Demonstrate a Valid Assignment of his Breach of Contract Claim (Count 1), Has No Plausible Claim for Relief on this Count, and Lacks Standing to Assert the Same.

Count 1 of Shoemaker's Complaint alleges Quintessa breached a written contract that was entered into on November 30, 2020, between Quintessa and Clear View (Shoemaker's "assignor"). (Complaint, ¶¶ 9-15, Dkt. 1). Shoemaker attaches the written contract as Exhibit 1 to his Complaint. (*See* contract, Dkt. 1-1). Quintessa respectfully requests the Court to take judicial notice of this contract.[2]

Section VIII(i) of the contract expressly provides that "neither party may directly or indirectly assign or transfer [the contract] by operation of law or otherwise without the prior written consent of the other party." (*See* contract, Dkt. 1-1). Thus, Clear View's attempt to assign Shoemaker its rights and benefits under the contract is improper, and consequently, Shoemaker has not actually acquired any enforceable interest in the contract.

In Oklahoma, although contractual rights are "presumed to be assignable," a contract between parties "may expressly provide otherwise." *In re Kaufman*, 2001 OK 88,

---

[2] Federal Rule of Evidence 201 states that the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . .; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Judicial notice of the contract is proper here because the contract is central to the complaint and no party disputes its identity or authenticity. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) ("Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion. Exceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice.") (internal citations and quotations omitted).

¶ 8, 37 P.3d 845, 851. "In considering whether contractual rights may be alienated," courts "look to the parties' intent manifested by the agreement's language." *Id.*, ¶ 13, 37 P.3d at 853. "[W]here the anti-assignment provision is clear and unambiguous . . . , the restriction on alienability is valid." *Id.* Exploring this topic further, the Oklahoma Supreme Court in *Kaufman* noted the following:

> Policy supporting free alienability is not so absolute as to override contract provisions clearly prohibiting assignment. To hold otherwise would require us to ignore validly executed, and freely made, anti-assignment provisions in contravention of well settled principles of Oklahoma's contract law allowing parties to include such provisions in their negotiations.

*Id.*, ¶ 22, 37 P.3d at 855.

Here, the contract between Quintessa and Clear View unequivocally states that "neither party may directly or indirectly assign or transfer [the contract] by operation of law or otherwise without the prior written consent of the other party." The intent of the parties could not be clearer, and this Court should hold as a matter of law that Clear View's purported assignment of a breach of contract claim to Shoemaker had no legal effect.

**B.**  **Shoemaker Has Failed To Demonstrate a Valid Assignment of Counts 2-11, Has No Plausible Claim for Relief on Such Counts, and Lacks Standing to Assert the Same.**

In addition to pleading a breach of contract claim, Shoemaker's Complaint identifies ten other Counts which Clear View "assigned" to him: Count 2) breach of the covenant of good faith and fair dealing; Count 3) fraud; Count 4) negligent misrepresentation; Count 5) intentional interference with business relations; Count 6) negligent interference with business relations; Count 7) conspiracy to commit fraud; Count 8) conspiracy to

intentionally interfere with business relations; Count 9) conspiracy to negligently interfere with business relations, Count 10) intentional interference with contract; and Count 11) negligent interference with contract. Notably, each of these ten additional Counts sounds in tort rather than contract.

Questions concerning the validity of a claim assignment not sounding in contract (i.e., tort claims) are ordinarily questions of state law. *Dotson v. AWA Collections*, Case No. 22-6078 (10th Cir. decided April 24, 2023) ("All agree the validity of the assignments turns on state law."). Here, Oklahoma law unquestionably controls the purported assignment of ten tort claims to Shoemaker, as the written agreement between Clear View and Quintessa expressly states that Oklahoma law shall apply to disputes between the parties. (*See* contract, Section VIII(e), Dkt. 1-1) ("The validity, construction, and performance of this Agreement shall be governed by and construed in accordance with the laws of Oklahoma or any applicable federal laws or states applicable to contracts . . . ."). Furthermore, Quintessa is an Oklahoma limited liability company, the present suit was filed in a federal court in Oklahoma, and all acts complained of in Shoemaker's Complaint are alleged to have occurred by Quintessa within the state of Oklahoma.

Under Oklahoma law, however, tort claims are *not assignable*. Oklahoma statutes expressly provide that "[t]he assignment of claims not arising out of contract is prohibited." OKLA. STAT. tit. 12, § 2017(D). Thus, the purported assignment of ten tort claims from Clear View to Shoemaker is a legal nullity. *See Dotson v. AWA Collections*, Case No. 22-6078 (10th Cir. decided April, 24, 2023); *see also* the following orders from the U.S. District Court for the Western District of Oklahoma, all citing 12 O.S. § 2017(D) and

finding tort claims to be non-assignable under Oklahoma law: *Dotson v. IC Systems Inc.*, Case No. 5:22-cv-00014-HE (W.D. Okla. May 9, 2022); *Lottie v. Midland Credit Management, Inc.*, Case No. 5:21-cv-01171-PRW (W.D. Okla. June 23, 2022); *Dotson v. Source Receivables Management, et. al.*, Case No. 5 :22-cv-00198-HE (W.D. Okla. May 10, 2022); *Dotson v. Midland Credit Management, Inc.*, Case No. 5:22-cv-257-R (W.D. Okla. May 17, 2022). As the assignment of Counts 2-11 is prohibited by Oklahoma law, Shoemaker has no standing to bring such claims as Clear View's "assignee."

C. **Because Shoemaker Lacks Standing To Assert Any Breach of Contract or Tort Claims Against Quintessa, His Complaint Must be Dismissed For Lack of Subject Matter Jurisdiction.**

As discussed in Part A and Part B, above, the contract at issue and controlling state law prohibit assignment of the contract and tort claims asserted in Shoemaker's Complaint. There being no valid assignment of these claims, Shoemaker has no standing in this case.

The party seeking relief in a federal court action "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Article III standing requires a showing of three elements. *Lujan,* 504 U.S. at 560. First, the plaintiff must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is both (1) concrete and particularized, and (2) actual or imminent, as opposed to conjectural or hypothetical. *Id.* Further, the U.S. Supreme Court has held that "at an irreducible minimum, Art. III requires the party who invokes the Court's authority to 'show that [plaintiff] *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citing

12

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979) (emphasis added). Second, there must be a causal connection between the injury and the conduct complained of, i.e., the injury must be fairly traceable to the challenged act, and not the result of some third party not before the Court. *Lujan*, 504 U.S. at 560. Third, the injury complained of must be redressable to confer standing. *Id.*

All Article III standing requirements must be met; a failure to demonstrate any one is fatal, as the Court would not have subject matter jurisdiction. *Id.* In the instant case, Shoemaker fails to demonstrate he has *personally* met the first element of standing—a "concrete and particularized invasion of a legally protected interest." After all, every claim asserted in Shoemaker's Complaint is premised on the business relationship between Quintessa and Clear View, not a relationship between Quintessa and Shoemaker. And because the purported claim assignments from Clear View are invalid, these assignments do not confer standing on Shoemaker.

As Shoemaker lacks standing to bring the present claims, this Court lacks subject matter jurisdiction and should dismiss Shoemaker's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). FED. R. CIV. P. 12(b)(1); *Hill,* 702 F.3d at 1224 ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction.").

**D.**    **<u>Even if Clear View's Assignments Are Valid and Shoemaker Has Standing to Bring the Present Claims, Counts 2-11 Must Be Dismissed for Independent Reasons under Federal Rule of Civil Procedure 12(b)(6).</u>**

     **i.**    **Count 2 – Breach of the Implied Covenant of Good Faith and Fair Dealing Against Quintessa #1.**

Shoemaker's claim for "breach of the implied covenant of good faith and fair dealing" should be dismissed because no such cause of action exists under Oklahoma law for the contractual relationship at issue. Oklahoma courts have repeatedly refused to impose tort liability for breach of contract claims. *RJB Gas Pipeline Co. v. Colo. Interstate Gas Co.*, 1989 OK CIV APP 100, ¶ 59, 813 P.2d 1, 12 (overruled on other grounds); *Rodgers v. Tecumseh Bank*, 1988 OK 36, ¶ 18, 756 P.2d 1233, 1227. While Oklahoma generally recognizes the obligation to exercise good faith and fair dealing in contracts, a breach of that implied covenant simply results in a breach of contract, not an independent tort for "bad faith" (outside of an insurance context). *See First National Bank & Trust Co. of Vinita v. Kissee*, 1993 OK 96 ¶¶ 24-26, 859 P.2d 502, 509 (explaining that a bank customer has no claim for breach of the implied covenant of good faith that is separate and distinct from a breach of contract claim); *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 999 (10th Cir. 2008).

The court in *RJB Gas Pipeline* aptly noted the dangers associated with expansion of tort law beyond the contours that currently exist:

> The issue is whether, in Oklahoma, a claim for tortious breach of contract based on the implied duty of good faith lies, outside the insurance law context. *See Christian v. American Home Assurance Company*, 577 P.2d 899 (Okla.1977). In *Rodgers v. Tecumseh Bank*, 756 P.2d 1223 (Okla.1988), the Oklahoma Supreme Court held the implied duty of good faith and fair dealing, imposed upon contracts of insurance, should not be extended to contracts for commercial loans in order to support an action for tortious breach of contract. The Supreme Court declined to extend such duty because of the inherent differences between insurance policies and commercial loan agreements. RJB makes a persuasive argument in utilizing the "similar characteristics" factors in *Wallis v. Superior Court*,

14

> 207 Cal.Rptr. 123, 160 Cal.App.3d 1109 (1984) in order to
> strike a similarity between characteristics of the instant case
> and those which would allow a finding of a tortious breach in
> an insurance contract. However, this Court, also, declines to
> extend the duty of good faith and fair dealing to take-or-pay
> gas purchase contracts.

*RJB Gas Pipeline*, ¶ 58, 813 P.2d at 11. The Oklahoma Supreme Court reinforced this point in *Rodgers*: "To impose tort liability . . . for every breach of contract would only serve to chill commercial transactions." *Rodgers*, ¶ 16, 756 P.2d at 1227 (further explaining that tort claims for breach of the implied duty of good faith "thus far, apply only against insurers").

More specifically, the Oklahoma Supreme Court has explained that an alleged breach of the implied covenant of good faith will support an independent tort claim, separate and apart from a breach of contract claim, **only** in the very limited circumstances arising under insurance contracts, due to the inherent disparity in bargaining power and adhesion contracts that are the hallmarks of the insured-insurer relationship. *See Kissee*, 1993 OK 96, 859 P.2d 502; *Rodgers*, ¶¶ 14-16, 756 P.2d at 1226.

More recently, the Oklahoma Supreme Court in 2010 clarified its position on this topic, explaining that it has:

> expressed reluctance to extend tort recovery for bad faith
> beyond the insurance field. *Id.* at ¶ 25, 859 P.2d at 509.
> However, an insurance contract is not required to support tort
> liability for bad faith but instead such liability depends upon
> the existence of a "special relationship" under a contract (like
> the "special relationship" of an insurer and insured). *Id.*
>
> **The "special relationship" that gives rise to tort
> liability for bad faith is marked by (1) a disparity in
> bargaining power where the weaker party has no choice of**

> **terms, also called an adhesion contract, and (2) the elimination of risk.** *Rogers v. Tecumseh Bank*, 1988 OK 36, ¶¶ 14-16, 756 P.2d 1223, 1226. Tort liability is allowed in these types of contracts, because bad faith, or, more properly, breach of the implied duty to deal fairly and in good faith, precipitates the precise economic hardship the contract was intended to avoid.

*Embry v. Innovative Aftermarket Sys. LP*, 2010 OK 82, ¶¶ 6-7, 247 P.3d 1158, 1160 (emphasis added).

In the present case, Shoemaker does not allege, nor could he allege, that the parties' relationship involved a "disparity of bargaining power" where Clear View had "no choice of terms," or that the contract at issue pertained to the "elimination of risk" (such as an insurance contract). Accordingly, Shoemaker has failed to state a plausible claim for "breach of the implied duty of good faith and fair dealing," and this claim (Count 2) should be dismissed.

### ii. Count 3 – Fraud/Intentional Misrepresentation.

It is a well-established principle in Oklahoma that, to simultaneously assert a claim for fraud and a claim for breach of contract, the claims must be distinct. "[A] party may not allege breach of contract and fraud claims based on identical facts, and the claims must be sufficiently distinct in order for a party to simultaneously maintain claims for breach of contract and fraud." *Transcontinental Gas Pipe Line Co. v. Kibby Welding*, LLC, Case No. 18-CV-0445-CVE-FHM (N.D. Okla. Aug. 8, 2019) (citing *Horton v. Bank of America*, 189 F. Supp. 3d 1286, 1290-91 (N.D. Okla. 2016); *Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Group*, 2014 WL 3891267, *5 (N.D. Okla. Aug. 7, 2014); *McGregor v. National Steak Processors, Inc.*, 2012 WL 314059, *3 (N.D. Okla.

Feb. 1, 2012)). Moreover, the alleged fraud "must have resulted in damages greater than those caused by the breach of contract alone." *Id.* (quoting *West v. Ditech Financial LLC*, 2016 WL 3200296, *4 (W.D. Okla. June 8, 2016).

Here, Shoemaker's fraud claim against Quintessa is nothing more than a superficial repackaging of his breach of contract claim. Shoemaker alleges the following facts in support of this breach of contract claim: 1) the contract between Quintessa and Clear View states that Quintessa will pay Clear View a specific commission for leads; 2) Quintessa failed and refused to pay Clear View the commission for leads and failed to provide an accounting pertaining to the commissions; and 3) that Shoemaker has been damaged in the amount "estimated to be over $100,000." (Complaint, ¶¶ 10-11, 13-15, Dkt. 1).

Shoemaker's fraud claims are premised on these very same facts, only dressed up with additional comments about Quintessa having an "intent to deceive" and an "ulterior motive." Indeed, Shoemaker's fraud claim alleges that Quintessa falsely represented it would pay Clear View specific commissions for leads, failed to pay such commissions, failed to provide an accounting, and did all of these acts "with a conscious disregard of Clear View's rights and with the intent to vex, injure, or annoy Clear View such as to constitute oppression, fraud or malice." (Complaint, ¶¶ 24-29, Dkt. 1). Moreover, Shoemaker asserts the exact same damage amount for its fraud claim that it asserts for its breach of contract claim—an amount "estimated to be over $100,000." (Complaint, ¶ 28, Dkt. 1).

Shoemaker does not allege any facts indicating that the alleged fraud "resulted in damages greater than those caused by the breach of contract alone." *Transcon. Gas Pipe*

17

*Line,* 18-CV-0445-CVE-FHM (N.D. Okla. Aug. 8, 2019) at 4. For this reason, Shoemaker's fraud claim is superfluous, duplicative, and barred under Oklahoma law.

### iii.    Count 4 – Negligent Misrepresentation.

Similar to his fraud claim, Shoemaker's claim for "negligent misrepresentation" is a mere repackaging of his breach of contract claim. This claim relies on the exact same underlying facts (an alleged agreement for Quintessa to pay specific commissions and a failure to do so) and asserts the exact same amount of damages (an "amount estimated to be over $100,000"). (Complaint, ¶¶ 30-37, Dkt. 1). Shoemaker does not allege any facts indicating that the alleged "negligent misrepresentation "resulted in damages greater than those caused by the breach of contract alone." *Id.* Therefore, Shoemaker's claim for "negligent misrepresentation" is duplicative, superfluous, and should be dismissed.

### iv.    Counts 5 and 6 – Intentional Interference with Business Relations and Negligent Interference with Business Relations.

As explained by the Oklahoma Supreme Court,

> Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage. *Mac Adjustment, Inc.*, 1979 OK 41, ¶ 5, 595 P.2d 427, 428. Additionally, **the claim is viable only if the interferor is not a party to the contract or business relationship.** *Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, ¶ 18, 911 P.2d 1205, 1209.

*Wilspec Technologies, Inc. v. Dunan Holding Group*, 2009 OK 12, ¶ 15, 204 P.3d 69, 74 (emphasis added).

At first glance, the nature of the tortious interference claims alleged by Shoemaker in this case is vastly different than the types of interference claims previously recognized by the Oklahoma Supreme Court. Here, Shoemaker alleges that his "assignor" Clear View had a business relationship with certain unnamed law firms, that Clearview referred Quintessa to do business with those law firms, and that Quintessa performed a contract with the law firms in a way that "reflected on" Shoemaker's assignor and "damaged the relationship to the point that the law firms refused to do further business with Plaintiffs' assignor." (Complaint, ¶¶ 38-40, Dkt. 1). In this regard, Shoemaker's tortious interference claims appear to be premised solely on damage allegedly done to Clear View's reputation through its referring of Quintessa to law firms with whom Clear View had a prior relationship.

However, as made clear by the Oklahoma Supreme Court in *Violes*, an intentional interference claim is "viable only if the interferor is not a party to the contract or business relationship." *Voiles*, ¶ 18, 911 P.2d at 1209. Shoemaker's Complaint openly concedes that Quintessa *was* a party to the business relationship between Clear View and the unnamed law firms. After all, Shoemaker's Complaint states that Clear View referred Quintessa to the law firms, and as a result of this joint business relationship, all three parties would benefit (including Clear View through the payment of commissions stemming from the referral). (Complaint, ¶ 8, Dkt. 1). Because Quintessa was brought into the business relationship between Clear View and the unnamed law firms, an intentional interference claim against Quintessa cannot stand pursuant to the Oklahoma Supreme Court's decision

in *Violes*.[3] Thus, Shoemaker has failed to state a plausible claim for "intentional interference with business relations" (Count 5), and this Count should be dismissed.

The same conclusion should be reached with respect to Count 6 – Negligent Interference with Business Relations. In discussing tortious interference claims, the Oklahoma Supreme Court in *Wilspec Technologies* concluded that such a claim requires proof of the following elements: "(1) the interference was with an existing contractual or business right; (2) **such interference was malicious and wrongful**; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Technologies,* ¶ 15, 204 P.3d at 74 (emphasis added).

In short, proving a tortious interference claim in Oklahoma requires proof of *malice*. Simple negligence will not do. While footnote 1 in *Wilspec Technologies* states that "[t]he Restatement (Second) of Torts, § 766(C) also recognizes a negligent interference with either a contract or a prospective contractual relation," the court did not go on to discuss whether Oklahoma recognizes any form of "negligent interference" claim. Nonetheless, given the court's holding that tortious interference claims require a showing of "malice," any level of culpability short of this—including mere negligence—is insufficient to prove tortious interference. Count 6 should therefore be dismissed for failure to state a claim.

---

[3] Shoemaker does not allege that Quintessa interfered with any other relationship Clear View had with the unnamed law firms *which existed outside* of the referral relationship that was set up to benefit all three parties.

> **v.    Counts 7-9 – Conspiracy to Commit Fraud, Conspiracy to Intentionally Interfere with Business Relations, and Conspiracy to Negligently Interfere with Business Relations Against Quintessa #1 and Quintessa #2.**

Shoemaker's civil conspiracy claims (Counts 7-9) are premised on Shoemaker's allegation that two separate Quintessa entities conspired to commit certain wrongful acts: "Quintessa LLC", which Shoemaker identifies as "Quintessa #1", and "Quintessa Marketing LLC", which Shoemaker identifies as "Quintessa #2." Shoemaker's belief that two separate Quintessa entities are involved in this case is demonstrably false, and Shoemaker would have known this had he performed *any* diligence before asserting frivolous conspiracy claims.

Quintessa requests the Court to take judicial notice of the fact that there is no Oklahoma entity named "Quintessa Marketing LLC."  "Quintessa LLC" is the only entity at issue, which goes by the registered tradename "Quintessa Marketing." Thus, "Quintessa Marketing" and "Quintessa LLC" are one and the same entity. This indisputable fact can be easily determined by a review of the business entity listings on the Oklahoma Secretary of State's website: https://www.sos.ok.gov/corp/corpInquiryFind.aspx. *See* FED. R. EVID. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Under Oklahoma law, "[a]ctionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by

21

unlawful means." *Schovanec v. Archdiocese of Oklahoma City*, 2008 OK 70, ¶ 46, 188

P.3d 158, 175; *Kiefner v. Sullivan*, Case No. 13-CV-714-TCK-FHM (N.D. Okla. May 27,

2014). "The essential elements [of a civil conspiracy claim] are: (1) two or more persons;

(2) an object to be accomplished; (3) a meeting of minds on the object or course of action;

(4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.*

It is indisputable that Quintessa LLC and Quintessa Marketing are a single entity.

Thus, Shoemaker cannot establish the first element of a conspiracy claim—that there be

"two or more persons" involved. For this reason, Shoemaker's conspiracy claims (Counts

7-9) should be dismissed.

### vi.    Counts 10 and 11 – Intentional Interference with Contract and Negligent Interference with Contract Against Quintessa #2.

Counts 10 and 11 in Shoemaker's Complaint are claims asserted against "Quintessa

#2" for intentionally and negligently interfering with the contract between Shoemaker's

"assignor," Clear View, and "Quintessa #1." (Complaint, ¶¶ 63-75, Dkt. 1). Quintessa #2

is identified in Shoemaker's Complaint as "Quintessa Marketing LLC." (Complaint, ¶ 1,

Dkt. 1). As discussed above, "Quintessa Marketing LLC" is a non-existent entity.

"Quintessa Marketing" is simply the tradename for "Quintessa LLC." Further, Quintessa

cannot interfere, either intentionally or negligently, with a contract between *itself* and

Shoemaker's "assignor."

Oklahoma recognizes causes of action for tortious interference with a contract or

business relationship "if the plaintiff can prove (1) the interference was with an existing

contractual or business right; (2) such interference was malicious and wrongful; (3) the

interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Technologies,* ¶ 15, 204 P.3d at 74.

However, an interference claim "is viable only if the interferor is not a party to the contract or business relationship." *Id.* (citing *Voiles*, ¶ 18, 911 P.2d at 1209. Here, Quintessa was clearly a party to the subject contract with Clear View, and it cannot be held liable for tortiously interfering with *its own contract*. Counts 10 and 11 are therefore frivolous and should be dismissed.

### E.   Shoemaker's Plea for Punitive Damages Must Be Rejected.

In addition to asserting eleven different Counts against Quintessa, Shoemaker's Complaint contains a plea for "[p]unitive and exemplary damages in the amount of $250,000." (Complaint, ¶ 77, Dkt. 1). Oklahoma law, however, strictly limits the availability of punitive damages. "The plea for punitive damages rests on the underlying claim, and if there is no recovery on the underlying claim, there can be no recovery of punitive damages." *Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 21, 867 P.2d 1241, 1247.

As Shoemaker has failed to state a plausible claim for relief under any cause of action and lacks standing to bring the present claims, Shoemaker's plea for punitive damages must likewise be rejected.

## IV.   CONCLUSION

For the foregoing reasons, Defendant, Quintessa LLC, requests that its Motion to Dismiss be granted and that Plaintiff's Complaint be dismissed in its entirety, without leave to amend.

Respectfully submitted,

*/s/ Benjamin M. McCaslin*
Benjamin M. McCaslin, OBA No. 32826
STRIDE LAW, PLLC
P.O. Box 1407
Guthrie, OK 73044
Telephone: (405) 562-7740
Facsimile: (405) 562-5646
Email: ben@stride.law
**ATTORNEY FOR DEFENDANT
QUINTESSA LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, I served the foregoing document via U.S. Mail and E-mail to the following:

Mark Alan Shoemaker
21215 Concordia Park Lane
Richmond, Texas 77407
mark.alan.shoemaker@gmail.com
**PLAINTIFF,** *PRO SE*

*/s/ Benjamin M. McCaslin*
Benjamin M. McCaslin, OBA No. 32826