UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK ALAN SHOEMAKER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: 23-CV-202-J |
| QUINTESSA LLC, et al., | ) ) ) |
| Defendants. | ) |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION AND BRIEF IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), Defendant, Quintessa LLC ("Defendant" or "Quintessa"), moves the Court to dismiss this action for lack of subject matter jurisdiction. In support, Quintessa submits the following brief:

**I.   Introduction**

This case stems from a contract dispute between Quintessa and non-party Clear View Enterprises, LLC ("Clear View"). Quintessa is a marketing and lead generation company that specializes in providing client leads to law firms across the United States. Clear View is marketing company that also caters to law firms across the United States. On March 1, 2023, Shoemaker filed this action claiming to be the "assignee" of claims held by non-party Clear View. Complaint (Doc. No. 1). However, further investigation in this case has revealed that Shoemaker was not the assignee of Clear View's claims as of the date Shoemaker filed this action. *See* email thread between Shoemaker and Craig Alinder, **Exhibit 1**; Assignment, **Exhibit 2**; Assignment metadata, **Exhibit 3**; Dep. of Craig Alinder at 85:6-10, **Exhibit 4**. In fact, Clear View did not assign any claims to Shoemaker until

October 2, 2023—seven months after Shoemaker filed his Complaint and only after Quintessa served a discovery request seeking a copy of the alleged assignment. *See* email thread between Shoemaker and Craig Alinder, **Exhibit 1**; Assignment, **Exhibit 2**; Assignment metadata, **Exhibit 3**. For this reason, the Court should dismiss this case for lack of subject matter jurisdiction.

## II.    Argument and Authorities

### a) Shoemaker was not the "assignee" of Clear View's claims at the time he filed this action, and Shoemaker therefore lacks standing to proceed with the present claims.

The party seeking relief in a federal court action "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Article III standing requires a showing of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is both (1) concrete and particularized, and (2) actual or imminent, as opposed to conjectural or hypothetical. *Id.* Further, the U.S. Supreme Court has held that "at an irreducible minimum, Art. III requires the party who invokes the Court's authority to 'show that [plaintiff] *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979) (emphasis added). Second, there must be a causal connection between the injury and the conduct complained of, i.e., the injury must be fairly traceable to the challenged act, and not the result of some third party not before the Court. *Lujan*,

504 U.S. at 560. Third, the injury complained of must be redressable to confer standing. *Id.*

All Article III standing requirements must be met; a failure to demonstrate any one is fatal. *Id*. Furthermore, "standing must exist ***at the time an action is filed***." *Encompass Office Solutions Inc. v. Conn. Gen. Life Ins. Co.*, No. 3:11-cv-02487-L (N.D. Tex. Jul 25, 2012) (emphasis added) (citing *Lujan*, 504 U.S. at 571 n. 4 (1992) and *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000)).

In the instant case, Shoemaker cannot show he has *personally* met the first element of standing—a "concrete and particularized invasion of a legally protected interest." Indeed, every claim asserted in Shoemaker's Complaint is premised on the business relationship between Quintessa and Clear View, not a relationship between Quintessa and Shoemaker. Knowing he personally has no "concrete and particularized" injury in fact, Shoemaker asserts that he has standing as the "assignee" of Clear View's claims. Complaint ¶ 6 (Doc. No. 1). To be sure, an assignment of a cause of action can confer standing on the assignee if the assignor itself would have standing to bring the claims. *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). However, because standing must exist *at the time the action is filed*, a purported assignee must demonstrate that a valid assignment existed at the time the action commenced.

Here, no assignment existed at the time Shoemaker commenced this action. On October 16, 2023, Quintessa served Shoemaker with its first set of written discovery requests. Quintessa's Request for Production No. 4 requested a copy of the alleged assignment of claims from Clear View to Shoemaker. *See* Quintessa's Request for

3

Production No. 4, **Exhibit 5**. On November 15, 2023, Shoemaker served Quintessa with his discovery responses and document production. However, Shoemaker's document production did *not* include an assignment of claims from Clear View.

Approximately two months later, after Quintessa continued to press for a copy of the alleged assignment, Shoemaker supplemented his document production to provide a one-page document titled "Assignment." The Assignment was dated "March 1, 2023" and was signed by Craig Alinder, Vice President of Clear View. *See* Assignment, **Exhibit 2**.

Several weeks after receiving a copy of the Assignment, Quintessa served Clear View with a subpoena requesting production of documents relevant to this lawsuit, including Clear View's communications and agreements with Shoemaker. *See* Subpoena for Documents to Clear View, **Exhibit 6**. Clear View responded to Quintessa's subpoena by providing several hundred electronic files containing documents and correspondence exchanged between itself, Shoemaker, and Quintessa. Clear View's production included an email from Shoemaker to Mr. Alinder, dated October 1, 2023 (seven months after this case was filed), in which Shoemaker attached a *backdated* assignment and stated:

> From: Mark Shoemaker <mark.alan.shoemaker@gmail.com> Sent: Sunday, October 1, 2023 5:20 PM To: Craig Alinder <craig@betterppc.com> Subject: assignmet
>
> I don't know why but I can't find Clearview's assignment of the Quintessa matter to me, I sent them out as of March 1, 2023, so it is dated March 1, 2023, please sign and return as soon as possible since it must be disclosed to opposing counsel

*See* e-mail thread between Shoemaker and Craig Alinder, **Exhibit 1**.

4

The next day, on October 2, 2023, at 12:36 pm, Mr. Alinder replied to Shoemaker's email stating "Here you go," and attaching the backdated Assignment as a PDF file:

From: "Craig Alinder" <craig@betterppc.com>
Subject: RE: assignmet
Date: October 2, 2023 at 12:36:29 PM EDT
To: "'Mark Shoemaker'" <mark.alan.shoemaker@gmail.com>

Here you go

Thanks,
Craig

-------
Craig H. Alinder
802-664-4201
Email  LinkedIn

*Id*; *see also* Assignment, **Exhibit 2**.

Importantly, the metadata for the Assignment Mr. Alinder emailed to Shoemaker shows that the file was "created" and "last modified" on October 2, 2023, at 12:35pm, just *one minute* before Mr. Alinder emailed the file to Shoemaker:



5

*See* Assignment metadata, **Exhibit 3**.

In other words, the only assignment produced to date (by either Shoemaker or Clear View) is the Assignment attached as **Exhibit 2**, which was backdated to March 1, 2023 but signed and sent to Shoemaker on October 2, 2023. Additionally, Mr. Alinder admitted during his deposition that he *does not recall executing an assignment on March 1, 2023*. Dep. of Craig Alinder at 85:6-10, **Exhibit 4**.

The above evidence demonstrates that Clear View did not assign its claims to Shoemaker until October 2, 2023. Because no assignment existed when Shoemaker filed this lawsuit on March 3, 2023 (nor when Shoemaker filed his Amended Complaint on August 22, 2023), Shoemaker lacks standing to pursue the present claims. *See Lujan*, 504 U.S. at 571 n. 4; *Pederson*, 213 F.3d at 870 (noting that standing must exist *at the time the action is filed*). Accordingly, the Court should dismiss this case for lack of subject matter jurisdiction.

### b) Additional facts demonstrate that the "assignment" to Shoemaker is a sham.

To help the Court understand *why* Clear View did not properly and timely assign its claims to Shoemaker, the Court should first understand the context of the relationship between Shoemaker and Clear View and the underlying premise for the assignment. Shoemaker, the alleged "assignee" in this case, was formerly an attorney licensed to practice law in the state of California. However, Shoemaker was disbarred by the California Supreme Court in 2011. *See* Disbarment Notice from State Bar of California website, at https://apps.calbar.ca.gov/attorney/Licensee/Detail/134828, **Exhibit 7**. In an apparent

effort to skirt his disbarment, Shoemaker now convinces his "clients" to assign their claims to him so he can file suit in his own name, while also billing these clients by the hour for legal work he performs on the case and collecting an additional fee based on any amount he recovers for the client. Quintessa knows this because Clear View's subpoena production included the following email from Shoemaker to Mr. Alinder on March 1, 2023, which sets forth the agreement between Shoemaker and Clear View:

> From: Mark Shoemaker <mark.alan.shoemaker@gmail.com>
> Subject: billing on cases
> Date: March 1, 2023 at 5:02:35 PM EST
> To: Craig Alinder <craig@betterppc.com>
>
> Craig,
>
> We discussed and agreed to the following:
>
> (1) Beavil matter: My agreed rate of $250/hr plus costs and bill through attorney Michael Sofris
>
> (2) Lasorsa matter: My agreed rate of $250/hr plus costs subject to credit against 10% of recovery
>
> (3) Quintessa matter: My agreed rate of $100/hr plus costs, subject to credit against 10% of recovery
>
> If any of the above is not correct, let me know.
>
> Mark

*See* e-mail thread between Shoemaker and Craig Alinder, **Exhibit 8**.

In addition to showing that Shoemaker is charging Clear View for his legal work in this matter, this agreement shows that Clear View will still collect the majority of any recovery obtained. The fact that Clear View will receive the lion's share (or any) of Shoemaker's recovery in this matter means that it has retained an interest in the claims and it has not, in fact, fully assigned its claims against Quintessa to Shoemaker.

Clear View's subpoena production also included numerous emails from Shoemaker in which Shoemaker provides Clear View with an invoice for various legal services performed, such as drafting a pre-suit demand letter to Quintessa, drafting the Complaint, and responding to Quintessa's pre-answer Motion to Dismiss. *See* emails between Shoemaker and Craig Alinder, **Exhibit 9**; Invoices from Shoemaker, **Exhibit 10**.[1]

In sum, the above facts make it patently obvious that the assignment from Clear View to Shoemaker is nothing more than a sham designed to allow Shoemaker to practice law without a license and litigate cases on behalf of his "clients." Not only is Shoemaker's assignment scheme entirely contrived, but his actions indicate he is engaged in the unauthorized practice of law before this very Court. Indeed, Shoemaker's invoices and emails to Clear View plainly show that Shoemaker was billing Clear View by the hour for providing legal advice and drafting legal documents such as Clear View's pre-suit demand letter, the Complaint, and the response to Quintessa's Motion to Dismiss.[2]

---

1 Despite Quintessa's requests for production seeking all correspondence and agreements between Shoemaker and Clear View relating to this lawsuit, Shoemaker did not produce *any* of the emails or invoices included in **Exhibits 1, 8, 9, or 10**. Nor did Shoemaker object to producing such materials. He simply withheld these materials to conceal the facts surrounding the assignment, including the fact that no assignment was made until October 2, 2023. Further, Shoemaker represented in his discovery responses that he had produced *all* correspondence and that *there were no agreements* between himself and Clear View relating to the assignment. Quintessa has been attempting to confer with Shoemaker over his false discovery responses and concealment of relevant discovery materials, but Shoemaker has refused to respond to Quintessa's request for a meet and confer. As such, Quintessa anticipates filing a Motion to Compel and/or a Motion for Sanctions in the near future.

2 Clear View is fully aware that Shoemaker is not a licensed attorney. Dep. of Craig Alinder at 79:20-21, **Exhibit 4**. Clear View nonetheless agreed to the arrangement with Shoemaker due to the "expense" of hiring an attorney to litigate the case. *Id.* at 85:14-20.

### III.    Conclusion

Based on the foregoing, Quintessa requests the Court to 1) dismiss this action for lack of subject matter jurisdiction, and 2) grant Quintessa any further relief the Court deems necessary or appropriate.

Respectfully submitted,

*s/ Benjamin M. McCaslin*
Benjamin M. McCaslin, OBA No. 32826
STRIDE LAW, PLLC
P.O. Box 1407
Guthrie, OK 73044
Telephone: (405) 562-7740
Facsimile: (405) 562-5646
Email: ben@stride.law
**Attorney For Defendant**
**Quintessa LLC**

### CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2024, I served the foregoing document via electronic mail to the following, who is not an ECF registrant:

Mark Alan Shoemaker
21215 Concordia Park Lane
Richmond, Texas 77407
mark.alan.shoemaker@gmail.com
**Plaintiff,** *Pro Se*

*s/ Benjamin M. McCaslin*
Benjamin M. McCaslin, OBA No. 32826